## SUPERIOR COURT.

### ANDREW SWITZER agt. JAMES VALENTINE.

*It seems* that a *married woman* cannot, since the acts of 1848 and 1849, any more than before, engage in trade and business, and make valid contracts in her own name and on her own account, even where she has separate property. Those acts do no more than to capacitate a married woman to hold as her own a separate property and to dispose of it as effectually as if she were unmarried.

Where a married woman, who carried on the boarding business, hired houses for the purpose, taking leases in her own name, with her name on the doorplate, made agreements with boarders, received the money, and paid rents, &c., bought furniture, and gave a note and chattel mortgage in her own name to secure the payment; *held*, that the property mortgaged having gone into possession of the husband as well as the wife, and there used for the support and benefit of their family, there was no separate property of the wife, the husband was liable for the debts contracted by the wife for its payment; consequently the note and mortgage given by the wife for its payment could not be enforced.

This was an action brought by the plaintiff for the wrongful taking and converting personal property, chairs, tables, carpets, bedsteads, and bedding, and other household furniture goods, and cooking utensils of the value of $800 claimed to be owned by and which were in the possession of the plaintiff at twenty-fifth street in the city of New-York.

The defendant denied generally the allegations of the complaint; and for a further and other answer said: That in consideration that one Caroline Switzer was indebted to the defendant in the sum of $560.74 for the purchase of certain household furniture, for moneys paid for the rent of the premises occupied by her, and for meats and provisions furnished to her, to enable her to carry on, conduct and maintain a boarding-house kept by her, in the city of New-York, the said Caroline Switzer on or about the 20th of February, 1853, gave her note to the said defendant for said sum, payable in three days after date, and for the securing the payment of said note, made, executed, and delivered to the defendant a chattel mortgage on the said furniture and other articles of household furniture,

wherein and whereby the said Caroline Switzer, in the event of the non-payment of said money, authorized and empowered the said defendant, with the aid and assistance of any person or persons, to enter her dwelling house, store, or other premises, or such other place or places wherein the said articles might be placed, and to take and carry away the said goods and chattels, and to sell and dispose of the same for the best price they could obtain, and out of the money arising therefrom, to retain and pay the said sum for which said mortgage was given to secure, and all charges touching the same.

That said note was not paid, or the money secured by said mortgage or any part thereof, but the said mortgage was forfeited; and this defendant on or about the 25th of August last, under and by virtue of the power contained in said mortgage, entered the house or premises in which the articles so mortgaged were situated, and foreclosed the said mortgage by the sale of said articles.

That said articles at the time of giving such mortgage and said entry and sale were the property of said Caroline Switzer, and were in her possession as well as that of said plaintiff. And that these are the articles, goods and chattels, and the trespasses alleged in the complaint.

The action was tried on the 8th of May, 1854, before Hon. Justice DUER and a jury.

*Harriet Switzer,* a witness called for the plaintiff, proved that she was a daughter of the plaintiff; that last summer they resided in twenty-fifth street. Mr. Chambers came to the house and said he had a bill of things, and called them off—had two sons and three cartmen with him. He called off the list of articles to witness. They took almost every thing out of the house. (Described the articles of furniture, &c., taken.) Their folks kept a boarding-house; it was full of boarders. The property took away was valued at $500. Some of it had not been in use a year.

On *cross-examination* said her father was a carpenter. The boarding-house was kept by both her father and mother. Could not say who hired the house. Lived at No. 19 Jay-

street previous to moving into this house on the 18th of July last. Her mother purchased the provisions. Her mother bought some of the furniture, and supposed her father bought the rest. Never heard her father say any thing about it. Had known defendant a long while prior to this. He was security for the rent of the premises for her mother No. 343 Greenwich-street. Was not security for her mother for the rent in Jay-street. The carpets that were bought were bought of Mr. Rowe. Her mother went to look at them. Was positive her father did not look at them. Knew defendant became security to Mr. Rowe for the purchase of said carpets. Knew Mr. Bishop, a furniture dealer. Knew of furniture coming from there to their house. Her mother went to see about it; defendant was there too ; did not see bill of furniture, if any was sent. The articles taken by Mr. Chambers had been in their house in Jay-street. Mr. Chambers took the articles that were named in the list. Judged the value of furniture from what she heard her mother say she paid for it. Had a door-plate on the door in Jay-street ; it had on it, " Mrs. A. Switzer." Her mother attended to the matters of the boarding-house. Was positive her father was consulted in relation to all matters. Her mother would see what things she wanted, and speak to her father about it and get them. Her father lived at the house. She was not present when her mother signed any paper for Valentine. The boarders paid their board to her mother ; her mother made the agreements with the boarders. Some few articles they had for a long time—knew the new furniture was not paid for, because she would have heard of it if it had been. Her father and mother both, she supposed, supported the family by keeping boarders. Her father worked continually at his trade. Her father was not in court—had not been there—knew her mother's hand-writing. Being shown the promissory note hereafter offered in evidence said : The signature was her mother's hand-writing. The papers for hiring the house in Greenwich-street were made out in defendant's name, that as defendant said her mother might be safe—defendant had the property mortgaged insured for $800. Her

mother paid the rent to the defendant.  She had heard her mother say so.

*Richard A. Chambers*, a witness for plaintiff, testified that he went to the house of plaintiff in twenty-fifth-street and took away the articles under the order and directions of Mr. Valentine—paid the defendant the proceeds of the sale.  He told witness before he took the articles that if Mrs. Switzer would do any thing to secure him, not to foreclose the mortgage.  The articles were sold in Spruce-street and brought $198.31—thought they brought what they were worth.  Mrs. Switzer was notified of the sale.

The plaintiff here rested.  The defendant moved for a dismissal of the complaint on the following grounds.  1st. The property was not proved to have belonged to the plaintiff. 2d. The authority of the defendant to the officer to take the property mentioned in the mortgage did not constitute the defendant a trespasser.

The motion was denied and the defendant excepted.

*James Willis* was sworn for defendant: the plaintiff was his son-in-law; plaintiff gave witness a mortgage on personal property.

The defendant offered to show by this witness that after the execution of the mortgage to the defendant, the plaintiff had given a mortgage on the same property to the witness, which mortgage became forfeited by non-payment of the amount secured before the goods were taken by the defendant.  This was objected to by plaintiff's counsel, and the objection sustained by the court.  Defendant excepted.

*Abraham M. Bininger* sworn for defendant.  Known Mrs. Switzer since the spring of 1852.  She applied to and made arrangements with witness to take the house No. 343 Greenwich-street for a boarding-house.  He rented the house to Mrs. Switzer; the lease was signed by her, not by her husband.  Did not know she had a husband.  She did not state she had a husband.  Defendant became security for the rent. Thinks defendant paid the rent.

*Wait Wells* sworn for defendant.  In 1852 rented to Mrs.

Switzer a house in Jay-street for a boarding-house. Mrs. Switzer signed the lease in her own name. She paid the rent. The name on the door was Mrs. Switzer.

*Dwight Bishop* sworn for defendant. Witness was a furniture dealer. Had known Mrs. Switzer six or seven years. She kept boarders during the time, and carried on business in her own name. She purchased furniture from him in her own name. Knew she had a husband. Was not personally acquainted with him. The furniture she bought herself she paid for, excepting one bill defendant paid in July, 1852. The bill was purchased by defendant, and charged on his books to defendant to be delivered to Mrs. Switzer. The goods were delivered in Greenwich-street at Mrs. Switzer's boarding-house. Had a conversation with Mrs. Switzer at the time. She said she had taken a large house, and the defendant had become security for her rent. That he was a friend to her. Witness drew a personal mortgage from Mrs. Switzer to the defendant. It was signed by Mrs. Switzer. He was a subscribing witness to it. The paper shown him was a certified copy of that mortgage. The goods defendant bought from him and which were delivered to Mrs. Switzer were included in that mortgage. Mrs. Switzer wanted defendant to advance her some money. Witness proposed that she should give the mortgage. She told witness that the property belonged to her, and that she had a right to mortgage it. Witness said he told her she had a husband, and he ought to be a party to it. She said she had always done business in her own name, and that her husband was always satisfied with what she had done. This was in February, 1853, when the mortgage was executed. Defendant also paid witness 10 or $20 for other goods that Mrs. Switzer had previously bought. These goods were also included in the mortgage. There was every thing in the house included. There was a note given by Mrs. Switzer at the same time the mortgage was executed. The paper shown witness was that note. Knew that Mrs. Switzer at that time was dealing with defendant, and owed him for meats.

*Wait Wells* recalled. Had received a note of $100 from Mrs. Switzer, drawn by defendant in her favor, in payment of rent due by her to witness.

*Thomas C. Thompson* sworn for defendant. Was a grocer. Mrs. Switzer dealt with him. She dealt in her own name.

The defendant then read in evidence the said chattel mortgage, and also the said promissory note executed by Mrs. Switzer to the defendant for $560.74, dated February 20, 1853, payable three days after date.

The parties here rested. His honor charged the jury that they must find a verdict for the plaintiff. That the only question of fact for their consideration was the amount of damages. To which charge and every part thereof the defendant excepted.

The counsel for the defendant requested his honor to charge the jury: 1. That it was a question of fact for them to determine, from all the facts and circumstances, whether the wife of the plaintiff was not authorized by her husband to execute the mortgage.

2. That it was a question of fact for them to determine who owned the goods seized by the defendant under the mortgage: whether they were those of the plaintiff or belonged to his wife as her separate property.

3. That if the jury believed from all the facts and circumstances that the plaintiff permitted his wife to use the property as her own, and in her own name, he cannot recover.

4. That if the jury believed the property received by plaintiff's wife from defendant, Valentine, was included in the mortgage, and was received by her from defendant, by gift or grant, that it was her own property, and that the plaintiff as to that property cannot recover.

The judge refused to charge as requested by the third and fourth propositions of defendant's counsel. And in respect to the first and second propositions he charged that there was no evidence showing authority or consent from the plaintiff to his wife to execute the mortgage; neither was there any evidence to show that she was the owner of the property or any part

thereof. To which refusal to charge, the counsel for the defendant excepted. The jury found a verdict for the plaintiff for $471.66 damages.

W. McDermot, *for plaintiff.*
T. E. Tomlinson, *for defendant.*

By the Court—Bosworth, J. The plaintiff proved that the property in question was taken from his possession, gave evidence of its value, and rested.

The defendant sought to justify the taking by proving the facts set up in his answer. They were, in brief, that Caroline Switzer owned the property, and mortgaged it to the defendant to secure the payment of a note of the same date as the mortgage, also given by her and payable to the defendant's order, and that he took the property under the mortgage.

The answer does not intimate that Caroline Switzer was the plaintiff's wife and had a separate property, nor does it aver that the plaintiff transacted any business in the name of " Caroline Switzer," and that she was authorized by him to transact such business for him or to mortgage the property in question, either in his name or in her own.

The fair meaning of the answer is, that the property belonged to her in her own right, and that being such owner she mortgaged it to secure a debt, which she personally owed to the defendant. The evidence showed clearly that she and the plaintiff were husband and wife, and that the defendant knew this when he took the note and mortgage : that they lived together as husband and wife : that he worked at his trade, and that she kept a boarding-house : that she made the purchases for the house, made contracts with the boarders, and received from them their board. All this was done with the husband's knowledge.

Prior to the acts of 1848 and 1849, allowing married women to take, hold, and dispose of property as if they were single and unmarried, there is no doubt that for all purchases made by the wife, with the knowledge and assent of the husband, and especially when the articles bought came to his possession,

in the sense and to the extent that the articles in question did, he would be liable to the vendor for the price. They could be seized and sold on an execution against him. In judgment of law they would be his property and not hers.

In this case many of the articles mortgaged were bought by him, some were purchased and paid for by her, some were bought by the defendant and sent to her by his order, and the price formed part of the amount of the note which the mortgage was given to secure, and the articles themselves were covered by the mortgage. Of the latter class were the articles bought of Dwight Bishop by the defendant, and the bill of them amounted to $155.

Have the acts of 1848 and 1849 any bearing upon the questions arising in this action? By these acts she may take by gift or grant from any person, except her husband, either real or personal property, and hold, convey, and devise it, or any interest in it, with like effect, as if she were unmarried. Does this do more than to capacitate a married woman to hold as her own a separate property, and to dispose of it as effectually as if she were unmarried? Does it authorize a married woman, even if she have a separate property, to become a general trader and make valid contracts in respect to any business which she may be disposed to undertake, or in respect to any speculations in which she may choose to engage? Is not the whole capacity which is given to her to purchase, limited to purchases which she may make on the credit of her separate estate, or for which she may pay with such estate or parts of it?

And is not all the new capacity which is given to her to convey or devise, limited to a conveyance or devise of her separate property?

Can a married woman who has no separate estate make now any valid contract which she could not have made before these acts were passed?

In the present case there is no pretence that Caroline Switzer ever had any separate estate. Even the property bought by Valentine of Dwight was not *given* to her, for she gave her

note for it. Was it granted to her within the meaning of these acts, so as to make it her individual property?

It went to the plaintiff's house and possession. It was appropriated to his use by being employed in a business prosecuted as a means of supporting his family. He is liable in law for its price, and could be taken on execution to satisfy his debts. In judgment of law it was sold to him, and was his property. (Lovett agt. Robinson, 7 *How. Pr. R. p.* 105, *vide* Hurd agt. Cass, 9 *Barb. S. C. R.* 366. Shumway agt. Cooper, 16 *Barb. S. C. R.* 556.)

We see no reason to grant a new trial on account of any charge made at the trial, or on account of any refusal to charge, as requested by the defendant.

No objection appears to have been made at the trial to the competency of any of the evidence given by the plaintiff to prove the value of the property taken. What Harriet Switzer heard her mother say was paid for the property should not have been received as evidence of its value, if it had been objected to. But no complaint seems to have been made at the trial to the reception of that evidence. It appears that the defendant effected an insurance on the property to the amount of $800. We cannot see that the damages are so clearly excessive as to require the court to grant a new trial merely on that ground.